**SAUL EWING LLP**
Shane P. Simon, Esq.
Jonathan H. Brueneman, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
Phone: (215) 972-7160
Fax: (609) 452-3122
*Attorneys for Defendant CBRE, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BECKER FARM ROSELAND LLC,<br><br>Plaintiff,<br><br>v.<br><br>CBRE, INC.,<br><br>Defendants. | Case No. 2:26-cv-01125 (JKW) (LDW)<br><br>**DEFENDANT CBRE, INC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |

**DEFENDANT CBRE INC.'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant, CBRE Inc. ("CBRE") responds to Plaintiff Becker Farm Roseland LLC's ("Plaintiff's") Complaint (the "Complaint") as follows:

## NATURE OF THE PROCEEDING

1. The allegations of this paragraph amount to legal conclusions to which no response is required. CBRE denies the allegations in Paragraph 1 of the Complaint that could or may be relied on to impose liability on it.

2. CBRE admits that Plaintiff has requested payment for certain charges it erroneously alleges are due and owing and CBRE has refused payment of same as CBRE is not liable for payment of those charges. CBRE denies the remaining allegations in Paragraph 2 of the Complaint.

## THE PARTIES

3. CBRE admits the allegations in Paragraph 3 of the Complaint.

4. CBRE admits the allegations in Paragraph 4 of the Complaint.

**JURISDICTION**

5. CBRE admits that it has offices in the state of New Jersey. The remaining allegations of this Paragraph amount to legal conclusions to which no response is required.

6. The allegations of this Paragraph amount to legal conclusions to which no response is required.

**FACTS**

7. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this Paragraph, specifically, whether Plaintiff is the *current* owner of a commercial office building located at 7 Becker Farm Road, Roseland, New Jersey 07068 ("Property") and, accordingly, this allegation is denied.

8. Paragraph 8 of the Complaint purports to describe language on CBRE's website, and CBRE refers the Court to the actual language found on the website and leaves Plaintiff to its proofs. CBRE admits the remaining allegations in Paragraph 8 of the Complaint.

9. CBRE admits to the extent that CBRE and Plaintiff entered into a contract titled the "Management Agreement" on January 8, 2021 (the "Management Agreement") regarding management services for the Property. CBRE further states that Paragraph 9 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

10. Paragraph 10 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself.

CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

11. Paragraph 11 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

12. Paragraph 12 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

13. Paragraph 13 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

14. Paragraph 14 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

15. Paragraph 15 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

16. Paragraph 16 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

17. CBRE admits that tenants no longer utilized the Property in September 2025. CBRE denies the remaining allegations in this Paragraph as stated.

18. CBRE admits that on July 31, 2024, CBRE and Plaintiff entered into an amendment to the Management Agreement (the "First Amendment"). To the extent that Paragraph 18 purports to describe the contents of the First Amendment, CBRE refers the Court to the language of the First Amendment, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

19. CBRE states that Paragraph 19 purports to describe the contents of the First Amendment. CBRE refers the Court to the language of the First Amendment, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

20. CBRE denies the allegations in Paragraph 20 of the Complaint as stated.

21. To the extent that Paragraph 21 describes a written communication from CBRE to Plaintiff at an unknown time and date, CBRE refers the Court to the written communication, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

22. CBRE denies the allegations of Paragraph 22 as a conclusion of law to which no response is required. To the extent Paragraph 22 purports to describe the contents of the

Management Agreement and First Amendment. CBRE refers the Court to the language of the First Amendment, which speaks for itself.

23. CBRE states that Paragraph 23 purports to describe the contents of an email sent by CBRE's employee, Thomas Kelso, to Plaintiff on September 24, 2024 (the "September Kelso Email"). CBRE refers the Court to the language of the September Kelso Email, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

24. CBRE lacks knowledge or information sufficient to form a belief as to the allegations regarding Plaintiff's alleged "reliance" set forth in this Paragraph. Accordingly, to the extent that this allegation requires any response, denied. CBRE denies the remaining allegations in this paragraph of the Complaint.

25. CBRE states that Paragraph 25 purports to describe the contents of an email sent by CBRE's employee, Thomas Kelso, to Plaintiff on November 26, 2024 (the "November Kelso Email"). CBRE refers the Court to the language of the November Kelso Email, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

26. CBRE denies the allegations in Paragraph 26 of the Complaint.

27. CBRE admits that Plaintiff's principal communicated concerning the Property's electric bills with CBRE's employee, Greg Ginis, in July 2025. The remaining allegations in Paragraph 27 are denied.

28. CBRE states that Paragraph 28 purports to describe the contents of an email sent by CBRE's employee, Greg Ginis, to Plaintiff on July 7, 2025 (the "July Ginis Email"). CBRE

refers the Court to the language of the July Ginis Email, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

29. CBRE denies the allegations in Paragraph 29 of the Complaint.

30. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 30. Accordingly, to the extent that these allegations require any response, denied.

31. CBRE admits that Plaintiff contacted Greg Ginis to inquire about the condition of the Property and water bill. CBRE denies the remaining allegations in this Paragraph of the Complaint.

32. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this Paragraph. Accordingly, to the extent that these allegations require any response, denied.

33. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this Paragraph. Accordingly, to the extent that these allegations require any response, denied.

34. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this Paragraph. Accordingly, to the extent that these allegations require any response, denied.

35. Paragraph 35 purports to describe the contents of an email sent by CBRE's employee, Greg Ginis, to Plaintiff on August 28, 2025 (the "August Ginis Email"). CBRE refers the Court to the language of the August Ginis Email, which speaks for itself. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

36. CBRE denies the allegations in Paragraph 36 of the Complaint.

37. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this Paragraph. Accordingly, to the extent that these allegations require any response, denied.

38. CBRE denies the allegations in Paragraph 38 of the Complaint.

39. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this paragraph. Accordingly, to the extent that these allegations require any response, denied.

40. CBRE denies the allegations in Paragraph 40 of the Complaint.

41. CBRE denies the allegations in Paragraph 41 of the Complaint.

42. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this paragraph. Accordingly, to the extent that these allegations require any response, denied.

43. CBRE admits the allegations in Paragraph 43 of the Complaint. Representatives of CBRE discussed Plaintiff's instructions with him and advised that certain functions of the building were still necessary.

44. CBRE lacks knowledge or information sufficient to form a belief as to the allegations set forth in this paragraph. Accordingly, to the extent that these allegations require any response, denied.

45. CBRE denies the allegations in Paragraph 45 of the Complaint. To the extent that Paragraph 45 asserts legal conclusions, no response is required.

46. CBRE admits that Plaintiff has demanded payment from Defendant for "electrical, water and gas charges." CBRE denies the remaining allegations of Paragraph 46.

47. CBRE admits the allegations in Paragraph 47 of the Complaint. CBRE is not liable for the claimed payments.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

48. CBRE incorporates by reference the responses set forth in the preceding paragraphs as if fully set forth herein.

49. CBRE states that Paragraph 49 purports to describe the contents of the Management Agreement and First Amendment. CBRE refers the Court to the language of the Management Agreement and First Amendment, which speak for themselves. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

50. CBRE states that Paragraph 50 purports to describe the contents of the Management Agreement and First Amendment. CBRE refers the Court to the language of the Management Agreement and First Amendment, which speak for themselves. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

51. CBRE denies the allegations of Paragraph 51 of the Complaint.

52. CBRE denies the allegations of Paragraph 52 of the Complaint. To the extent that Paragraph 52 sets forth legal conclusions, no response is required.

53. CBRE denies the allegations of Paragraph 53 of the Complaint. To the extent that Paragraph 53 sets forth legal conclusions, no response is required.

**WHEREFORE**, Defendant CBRE hereby demands that judgment is entered in its favor, against Plaintiff, along with any and all other relief that the Court may deem equitable, proper, and just.

**SECOND CAUSE OF ACTION**

**(Attorney's Fees)**

54. CBRE incorporates by reference the responses set forth in the preceding paragraphs as if fully set forth herein.

55. CBRE states that Paragraph 55 purports to describe the contents of the Management Agreement. CBRE refers the Court to the language of the Management Agreement and First Amendment, which speak for themselves. CBRE denies the allegations in this Paragraph that could or may be relied on to impose liability on it.

56. CBRE lacks knowledge or information sufficient to form a belief as to whether Plaintiff has incurred any legal fees. Accordingly, to the extent that these allegations require any response, denied. The remaining allegations set forth in Paragraph 56 are legal conclusions and, as such, no response is required.

57. The allegations set forth in Paragraph 57 are legal conclusions and, as such, no response is required.

**WHEREFORE**, Defendant CBRE hereby demands that judgment is entered in its favor, against Plaintiff, along with any and all other relief that the Court may deem equitable, proper, and just.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a cognizable cause of action pursuant to which legal or equitable relief can be awarded.

### SECOND AFFIRMATIVE DEFENSE

Any injury suffered by Plaintiff was proximately caused by its own actions or inactions, or those over whom CBRE had no control.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, or must be reduced, by virtue of Plaintiff's failure to mitigate, minimize, or avoid the damages allegedly sustained.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because CBRE did not breach a legal or equitable duty owed to Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because, to the extent that it relied on any alleged statements or omissions by CBRE, Plaintiff's reliance was neither justifiable nor reasonable and CBRE did not make a representation to Plaintiff that required correcting.

### SIXTH AFFIRMATIVE DEFENSE

CBRE complied with each and every duty and obligation to imposed on it by statute, regulation, contract, and common law.

**SEVENTH AFFIRMATIVE DEFENSE**

The tortious, negligent, and wrongful acts or omissions of other individuals and/or entities constituted an intervening, superseding cause of the damages alleged to have been sustained by Plaintiff.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to a recovery because it has not suffered damages.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' damages, if any, were not caused by and cannot be attributed to any act or omission of CBRE.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's damages, if any, may be limited and/or offset, in whole or in part, because Plaintiff would be unjustly enriched by the monetary relief it seeks.

**ELEVENTH AFFIRMATIVE DEFENSE**

CBRE reserves the right, pending the completion of discovery herein, to assert such additional defenses as may exist.

**WHEREFORE**, Defendant CBRE hereby demands that judgment is entered in its favor, against Plaintiff, along with any and all other relief that the Court may deem equitable, proper, and just.

## COUNTERCLAIM

CBRE, by and through its counsel, Saul Ewing LLP, as and for its counterclaim against Plaintiff, allege as follows:

## THE PARTIES

1. Plaintiff is a New Jersey limited liability company located at 222 NY-59, Suite 302, Suffern, New York 10901.

2. CBRE is a corporation duly organized under the laws of the State of Delaware and the primary operating subsidiary of CBRE Group, Inc., with its principal place of business in Dallas, Texas.

## FACTUAL BACKGROUND

3. CBRE provides real estate management and investment services.

4. On or about January 8, 2021, Plaintiff and CBRE entered into a management agreement (the "Management Agreement") whereby CBRE would manage the property located at 7 Becker Farm Road, Roseland, New Jersey 07068 (the "Property").

5. Under the Management Agreement Plaintiff was obligated to pay CBRE, as compensation for management services rendered related to the Property, a management fee of 2.5% of Gross Revenue or $2,500.00 per month, whichever was greater (the "Management Fee").

6. The Management Fee was due and owing by the 15th of every month.

7. The Management Agreement provided that Gross Revenue meant the total collections received from the Property, including, without limitation, all rents paid by tenants, including minimum rent, percentage or overage rent, rent escalations, operating expense pass-through components, common area maintenance reimbursements, utility income, concessions/abatement income, parking revenues or business interruption or rent loss proceeds,

any amount paid for or in connection with the termination of leases or other agreements with tenants, and collections relating to any signage, space or other ancillary property included within the scope of this Agreement or otherwise agreed upon by the parties.

8. The Management Agreement further provided that CBRE provide management services including, but not limited to, all ordinary maintenance, repairs, alterations, replacements and installations and purchase all supplies necessary for the proper operation of the Property.

9. On or about August 1, 2024, the sole tenant of the Property vacated the Property.

10. To date, no tenant has replaced the initial sole tenant, and the Property has remained vacant.

11. Therefore, the Property has not generated any revenue since August 1, 2024.

12. During the months of August of 2025 to November of 2025, CBRE performed its obligations under the Management Agreement as to management services.

13. Moreover, CBRE would perform general maintenance on the Property as needed and as directed by Plaintiff.

14. Therefore, the Management Fee in the amount of $2,150.00 was due and owing on August 15, 2025, September 15, 2025, October 15, 2025, and November 15, 2025 (the "Outstanding Months").

15. However, Plaintiff failed to pay the Management Fee as was due and owing to CBRE under the Management Agreement for the Outstanding Months.

16. To date, Plaintiff has failed and refused to pay the Management Fee to CBRE for the Outstanding Months.

17. Thus, the Outstanding Months totaled $8,600.00 (the "Arrears").

18. Therefore, CBRE has suffered actual damages and continues to suffer actual damages due to Plaintiff's failure to pay the Arrears.

**COUNT ONE**
**BREACH OF CONTRACT – ARREARS**

19. CBRE repeats and realleges each and every allegation contained within the foregoing paragraphs of the Counterclaim as if set forth at length herein.

20. Pursuant to the Management Agreement, Plaintiff owes Arrears in the amount of not less than $8,600.00.

21. Plaintiff has breached its obligations under the Management Agreement by failing to pay the Management Fee due and owing to CBRE for the months of August, September, October, and November of 2025.

22. As a direct and proximate result of Plaintiff's breaches, CBRE has suffered and will suffer damages.

**WHEREFORE**, Counterclaimant CBRE demands judgment against Plaintiff in the amount of not less than $8,600.00, plus compensatory and consequential damages, incidental damages, pre- and post-judgment interest, reasonable attorneys' fees and costs due under the Management Agreement, and for such other and further relief as the Court may deem appropriate.

**COUNT TWO**
**UNJUST ENRICHMENT**

23. CBRE repeats and realleges each and every allegation contained within the foregoing paragraphs of the Complaint as if set forth at length herein.

24. Plaintiff provided the management services to Plaintiff related to the Property in accordance with the Management Agreement.

25. Such benefit was provided at CBRE's expense.

26. CBRE's endeavors enriched Plaintiff by safeguarding the Property.

27. Plaintiff failed to give value to CBRE in exchange for CBRE's services.

28. Plaintiff's acceptance and retention of such benefit under the circumstances is inequitable.

29. Plaintiff has been unjustly enriched.

**WHEREFORE**, Counterclaimant CBRE demands judgment against Plaintiff in the amount of not less than $8,600.00, plus compensatory and consequential damages, incidental damages, reasonable attorneys' fees and costs due under the lease, and for such other and further relief as the Court may deem appropriate.

Respectfully submitted,

**SAUL EWING LLP**

By: *<u>/s/ Shane P. Simon</u>*
Shane P. Simon
650 College Road East, Suite 4000
Princeton, New Jersey 08540
(215) 927-7160
*Attorneys for Defendant CBRE, Inc.*

Dated: March 10, 2026

**CERTIFICATE OF SERVICE**

I, Shane P. Simon, hereby certify that on March 10, 2026, I caused a true and correct copy of the foregoing Answer to the Complaint to be filed via the Court's CM/ECF system effectuating service on the following counsel of record:

Nicholas Fortuna, Esq.
Allyn & Fortuna LLP
51 JFK Pkwy, 1st Floor West
Short Hills, NJ 07078
nfortuna@allynfortuna.com
*Attorney for Plaintiff Becker Farm Roseland LLC*

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willingly false, then I may be subject to punishment.

Dated: March 10, 2026

*/s/ Shane P. Simon*
Shane P. Simon